**No. 16-15151**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

Ervin Middleton; Ann Gates Middleton

Plaintiffs-Appellants,

vs.

Guaranteed Rate, Inc.; Wells
Fargo Bank, N.A., dba Wells
Fargo Home Mortgage, Inc.,
Defendants-Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA, LAS VEGAS
No. D.C. 2:15-cv-00943-RCJ-GWF

---

**APPELLANTS' OPENING BRIEF**

---

Ervin Middleton
Ann Gates Middleton
2375 E. Tropicana Ave. #358
Las Vegas, Nevada 89119
Tel: 702-478-8962
emiddle25@yahoo.com

I

# TABLE OF CONTENTS

**SECTION**                                                  **PAGE NO.**

TABLE OF CASES AND AUTHORITIES............................................................III

    Federal Cases……………………………………….............IV, V, VI, VII, VIII

    Federal Statues……………………………………………………….......……IX

    Federal Rules of Evidence………………………………………………………IX

    Federal Rules of Civil Procedures……………………………..……………X

    Federal Rules of Appellate Procedure……………………………..…....…X

STATEMENT OF JURISDICTION………………………………………………….1

STATEMENT OF THE ISSUES…………………………………………………..1

INTRODUCTION.......................................................................................2

STATEMENT OF THE CASE.....................................................................5

STATEMENT OF FACTS AND PROCEDURAL HISTORY..............................6

SUMMARY OF ARGUMENT.......................................................................8

STANDARD OF REVIEW…………………………………………………………10

    Rule 12(b)(6) Failure to State a Claim…………………………………..10

ARGUMENT…….......................................................................................12

    I.  The District Court erred in dismissing Appellant's complaint…………12

II.  Appellants Did Not Sue GRI and Wells Fargo For Rescission but for Enforcement of Rescission…………………………………………….17

III.  Ervin Middleton Does Not Lack Standing to Bring Suit Against Defendants.…………………………………………………………...21
   Real Party in Interest………………………………………………..21
   Injury-in-Fact………………………………………………………22
   Causation…………………………………………………………....23
   Redressability……………………………………………………….23

IV.  The District Court abused its discretion in not holding the complaint to less stringent standards and not granting Appellants leave to amend the complaint…………………………………………….…………….....25

V.  The District Court incorrectly misapplied TILA by declaring that the right to rescind under TILA exists only if the property is NOT itself the security for the loan obtained to purchase it……………………………28

VI.  The District Court erred and incorrectly interpreted the definition of "residential mortgage transaction"…………………………………....30

VII.  The District Court erred in not conforming to the Federal Rules of Evidence………………………………………………………………35

CONCLUSION…..............................................................................37

CERTIFICATE OF COMPLIANCE……………………………………39

CERTIFICATE OF SERVICE………………………………….………39

III

# TABLE OF CASES AND AUTHORITIES

**Federal Cases**

ACLU Foundation of Southern California v Barr (1991, App DC)
293 US App DC 101, 952 F2d 457, 21 FR Serv 3d 1063…………………………...12

Allen v. Wright,
468 U.S. 737, 756–57 (1984)………………………………….…………………..23

APCC Servs. v Sprint Communs. Co.
(2005, App DC) 368 US App DC 79, 418 F3d 1238, reh den (2005, App DC) 2005
US App LEXIS 24400 and reh, en banc, den (2005, App DC) 2005 US App
LEXIS 24402(criticized in Flying J Inc. v Sprint Communs. Co., L.L.P. (2006, DC
Utah) 2006 US Dist LEXIS 698) and vacated without op, remanded (2007, US)
127 S Ct 2094, 167 L Ed 2d 811…………………………………….…………...22

Ash v. Tyson Foods, Inc.,
2011 WL 6270741 (11th Cir. Dec. 16, 2011)…………………………………….20

Ashcroft v. Iqbal
129 S.Ct.1937,1951(2009)……………………………….…………………….16

Association of Data Processing Service Organizations v. Camp,
397 U.S. 150 (1970)………………………………………………………………23

Baker v. Carr,
369 U.S. 186, 204 (1962)…………………………………………………………24

Bayron v. Trudeau
702 F.2d 43, 45 (2d Cir. 1983)……………………………………………………28

Bell Atlantic Corp. v. Twombly
550 U.S. 544 (2007)……………………..…………………………………10, 16

Bell v Hood (1946)
327 US 678, 90 L Ed 939, 66 S Ct 773, 13 ALR2d 383………..………………...13

IV

Board of Regents v. Roth
408 U.S. 564 (1972)…………………………………………………………..3

Brandon v. Dist. of Columbia Bd. of Parole
734 F.2d 56, 62 (D.C. Cir. 1984) cert, denied, 469 U.S. 1127 (1985)……….27, 28

Cf. Maty v. Grasselli Chemical Co.,
303 U. S. 197……………………………………………………………...26

Conley v. Gibson
355 U.S. 41 at 48(1957)………………………….…………………………13, 26

Cato v. United States
70 F.3d 1103, 1106 (9th Cir.1995)………………………………………..25

Consumer Product Safety Commission v. GTE Sylvania, Inc.
447 U.S. 102, 108 (1980)…………………………………………………14

Connell v. Higginbotham
403U.S.207, 208……………………………………………………...3

Darr v. Burford
339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761………………………13, 26

Davidson v. Countrywide Home Loans, Inc.,
2011 WL 1157569, *5 (S.D.Cal. Mar. 29, 2011)…………………………24

De Jesus-Serrano v. Sana Inv. Mortgage Bankers, Inc.,
552 F. Supp. 2d 191 (D.P.R. 2007)…………………………………………30

DeWitt v. Pail
366 F.2d 682, 684-85 (9th Cir. 1966)………………………………………28

Downing v. New Mexico Supreme Court
339 F.2d 435, 436 (10th Cir. 1964) (per curiam)………………………… 28

Estate of Cowart v. Nicholas Drilling Co.
205 U.S. 469, 474 (1992)…………………………………………………14

Flast v. Cohen,
  392 U.S. 83, 99 (1968)……………………………………………………24

Haines v. Kerner
404 U.S. 519, 520-21 (1972)………………………………………………25, 27

Hal Roach Studios, Inc. v. Richard Feiner & Co.
 896 F.2d 1542, 1555 n.19 (9th Cir. 1990)…………………………………..15

Hall v. Bellmon,
 935 F.2d 1106, 1110 (10th Cir. 1991)……………………………………….26

Hoffman v. U.S.
244 F.2d 378, 379 (9th Cir. 1957)………………………………………..13, 26

Holsey v. Bass, 519 F. Supp. 395, 402-03 (D. Md. 1981),
aff'd, 712 F.2d 70 (4th Cir. 1983)…………………………………………28

Hughes v. Rowe,
 449 U.S. 5, 9-10 (1980)……………………………………………………27

In re Schweizer,
 354 B.R. 272 (Bankr. D. Idaho 2006)………………………………………30

Jesinoski v. Countrywide Home Loans, Inc.,
 574 U.S. ___ (2015)……………………………………4, 9, 12, 15, 17, 18, 21

Johnson v Secretary of U. S. Dep't of Housing & Urban Dev. (1981, ED La) 544 F
Supp 925, affd in part and revd in part on other grounds (1983, CA5 La) 710 F2d
1130………………………………………………………………………..21

Keiran v. Home Capital, Inc.,
 720 F. 3d 721, 727–728 (2013)…………………………………………...18

Kahle v. Gonzales
487 F.3d 697, 699 (9th Cir. 2007)…………………………………………7

Linda R.S. v. Richard  D.,
 410 U.S. 614, 616–18 (1973)……………………………………………..22

Madyun v. Thompson
  657 F.2d 868, 876 (7th Cir. 1981)……………………………………………………27

McGary v. City of Portland
  386 F.3d 1259,1261 (9th Cir.2004)…………...………………………………………..27

Navarro v. Block,
  250 F3d 729, 732 (9th Cir. 2001)……………………………………………………12

Noll v. Carlson
  809 F.2d 1446, 1448 (9th Cir.1987)……………………..…………………………….25

NL Indus., Inc. V. Kaplan
  792 F.2d 896, 898 (9th Cir. 1986)……………………………………………………10

Pearman v Norfolk & W.R. Co.
  (1991, CA7 Ill) 939 F2d 521……………………………………………………...11

Puckett v. Cox
  456 F2d 233………………………………………………………………………….26

Robinson v. Shell Oil
  519 U.S. 337, 340 (1997)……………………………………………………………14

Shroyer v. New Cingular Wireless Servs., Inc.,
  622 F.3d 1035, 1041 (9th Cir. 2010)………………………………………………...12

Simon v. Eastern Kentucky Welfare Rights Organization,
  426 U.S. 26, 39–44 (1976)…………………………………………………………22, 23

Stoner v. Santa Clara County Office of Educ.
  502 F.3d 1116, 1120 (9th Cir. 2007)……………………………..…………………10

Swierkiewicz v. Sorema N.A.
  534 U.S. 506, 514 (2002)……………………………………………………………10

Thomas W. Garland, Inc. v St. Louis (1979, CA8 Mo)
 596 F2d 784, cert den (1979) 444 US 899, 62 L Ed 2d 135, 100 S Ct. 208….…..11

Traguth v. Zuck,
 710 F.2d 90, 95 (2nd Cir. 1983)…………………………………………………26

United Pub. Workers v. Mitchell,
 330 U.S. 75, 90 (1947)……………………………………………………………23

United States v. General Motors Corp,
 323 U.S. 373 (1945)………………………………………………………………25

Virginia Electric & Power Co. v Westinghouse Electric Corp. (1973, CA4 Va)
 485 F2d 78, 17 FR Serv. 2d 1103, cert den (1974) 415 US 935, 39 L Ed 2d 493, 94
 S Ct 1450……………………………………………………………………..21

Walter Process Equipment v. Food Machinery
 382 U.S. 172 (1965)……………………………………………...………………13

Warth v. Seldin,
 422 U.S. 490, 499–504 (1975)……………………………………………………22

Williams v. Kullman
 722 F.2d 1048, 1050 (2d Cir. 1983)………………………………………………28

**Federal Statues**

12 CFR. 226.23……………………………………………………..2, 4, 5, 8, 12, 17

12 C.F.R. 226.23(d)(1)……………………………………………………17

12 C.F.R. 226.23(d)(I)…………………………………………………...5

12 C.F.R. 226.23(d)(2)…………………………………………………...5, 16, 19

12 C.F.R. § 1026.23(d)(2)(3)…………………………………………………17, 18

15 U.S.C. §1635……………………………………2, 4, 5, 8, 12, 17, 18, 28

15 U.S.C. §1635(a)……………………………………………………18, 19

15 U.S.C. §1635(b)…………………………………………………..5, 17

15 U.S.C. §1635(f)…………………………………………….......18

28 U.S.C. § 1291………………………………………………....……………1

**Federal Rules of Evidence**

102……………………………………………………………34, 35

104(b) …………………………………………………………..4

404……………………………………………………………...12

1101…………..………………………………………………...35

1101(a)(b)…………………………………………………...36

**Federal Rules of Civil Procedures**

F.R.C.P. 12(b)(6)……………………..……………….....1, 6, 7, 10, 11, 12, 13, 14

F.R.C.P. 17(a)………………………………………………………………21, 22

**Federal Rules of Appellate Procedure**

F.R.A.P. 4(a)(1)(B)……………………………………………………………1

F.R.A.P. 32(a)(7)(C)…………..……………………………………………..39

F.R.A.P. 32(a)(7)(B)(iii)……………………………………………….....39

## STATEMENT OF JURISDICTION

This is an appeal from the District Court's dismissal of Plaintiffs-Appellants complaint. The District Court dismissed Appellants complaint on June 25, 2015. A Notice of Appeal was timely filed on July 10, 2015. *See* Federal Rule of Appellate Procedure 4(a)(1)(B). E.R. Tab 1, p. 1, Notice of Appeal. This Court has jurisdiction over final orders of the District Court for the District of Nevada pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the District Court abused its discretion and/or erred in dismissing Appellants' complaint wherein Appellees motion to dismiss was based on F.R.C.P. 12(b)(6) where the court should have denied Appellees motions to dismiss.

2.      Whether the District Court abused its discretion and/or erred in misconstruing and/or misinterpreting a major material fact stating that Appellants "sued GRI and Wells Fargo in this Court for rescission" whereas Appellants sued to enforce the rescission which is effected by operation of law.

3.       Whether the District Court abused its discretion and/or erred in stating that Ervin Middleton has no standing and as a result no right of action in Federal court to pursue a TILA claim, because he is not an obligor of the loan and/or as an individual who's property rights are being affected.

4.      Whether the District Court abused its discretion and/or erred in not holding

Appellants' pleadings to a less stringent standard than those drafted by licensed, practicing attorneys and not allowing the Appellants to amend their complaint.

5.      Whether the District Court abused its discretion, erred, misconstrued and/or incorrectly misapplied TILA by declaring that "[In other words] the right to rescind under TILA exists only if the property is not itself the security for the loan obtained to purchase it." (See Order ECF 18, Pg. 6 Ln. 1-2)

6.      Whether the District Court abused its discretion, erred and/or misinterpreted the definition of "residential mortgage transaction" and if Congress had the intent under the definition to exclude the Appellants and an entire class of citizens numbering in millions from a remedy that Appellants argue TILA provides for a regular purchase of an existing property not under installment sales contract.

7.      Whether the District Court abused its discretion and/or erred in not conforming to the Federal Rules of Evidence.

## **INTRODUCTION**

1.      Appellants' Complaint is based on the Truth in Lending Act ("TILA") 15 U.S.C. §1635 and 12 *CFR.* 226.23, which gives Ann Gates Middleton an unconditional right of rescission of the loan documents. Appellant Ervin Middleton is a *husband* of Ann Gates Middleton and has a lawful interest in the community property namely the real property Appellants reside in. Ervin Middleton's claim is for restitution only.

2.      The Supreme Court, in *Board of Regents v. Roth*, 408 U.S. 564 (1972), noted that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it." Hence, the key to whether a person and in this case Ervin Middleton has a property interest in a benefit is whether that Ervin Middleton is entitled to the benefit. In order to determine whether a person is entitled to a benefit, courts generally consider the terms under which the government has offered the benefit. In order to have a Property Interest Ervin Middleton doesn't have to own the property individually, or be on the deed of trust as the district court and defendants portrayed, he has Constitutionally Protected Property Rights of Citizens contained within the marriage agreement with Ann Gates Middleton, and Ervin Middleton is an injured party where defendants violated the law who states a claim upon which relief not only can but *must* be granted.

3.      The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money. See *Board of Regents v. Roth*, 408 U.S. 564 (1972) quoting *Connell* v. *Higginbotham*, 403 U.S. 207, 208

4.      Appellants seek relief from this Court based upon clearly stated and well supported claim to *enforce* rescission based on TILA and Appellees violations

under 15 U.S.C. §1635 and 12 *CFR.* 226.23. The rescission is effective as of the *date of mailing*, See *Jesinoski* v. *Countrywide Home Loans, Inc.,* 574 U.S. ___ (2015) The Note and Deed of Trust are void as of the *date of mailing* of the notice of rescission as well. Appellants' suit is to enforce the rights under TILA for return of the note marked cancelled, reconveyance of the Deed of Trust and return of all monies paid and not seeking rescission.

5.     Appellants' Complaint with its *exhibits* being part of the record is hereby offered into evidence to show the Court of Appeals that Appellants have proven the truth of the matter asserted therein; with the intent to meet the Federal Rules of Evidence Rule 104(b), whereby the relevancy of the evidence is conditioned upon the existence of the following underlying fact(s), (1) On March 5, 2015, Ann Gates Middleton sent by certified mail return receipt a Notice of Rescission to Appellees, to which Appellees admit receiving on March 10, 2015 and March 12, 2015.

6.     At least 20 days passed from the date the Notice of Rescission was mailed and receipt of the Notice without Appellees or their agent contesting and/or challenging the rescission by filing within 20 days of receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission. As a result Appellees are (a) in violation of statute, subject to an enforcement suit on their duties under rescission (b) Appellees waived any objection to the rescission and its effective result of cancelling the loan documents that should have been

brought in their own lawsuit in an effort to stop modify or challenge the rescission within the 20 days.

## STATEMENT OF THE CASE

7.     Appellants instituted this action for actual damages and equitable relief, statutory damages, attorney's fees, and the costs of this action against all named Defendants for multiple violations of the Truth in Lending act, 15 U.S.C. § 1635 et seq., (hereinafter TlLA), and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.23, Restitution of Assets. Per statutes: Rescission effected per 15 U.S.C. 1635 (b) and Regulation Z, 12 C.F.R. 226.23(d)(I).

8.     Defendants did not protest or contest this rescission notice as required under § 226.23(d)(2)(3) therefore the loan debt had been forfeited and forever released by Defendants and any others involved by their failure to challenge within 20 days of tender of the rescission of their obligations under 226.23( d)(2(3) by the end of the 20 day performance period ending on *3/30/2015.* Therefore, under the law there is no enforceable Note or Deed of Trust to be made by Defendants or any other parties involved as outlined in TILA and Appellants' complaint.

9.     Contrary to the District court's order, the instant case was NOT brought forth to request that the court adjudicate whether Plaintiffs have or do not have the right to rescind the instant case was to enforce the rescission that Appellees intentionally ignored.

10.     Appellants desire a judicial determination regarding issues raised on Appeal and reversal of the court's June 25, 2015 order dismissing the complaint.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

11.     On May 19, 2015, Plaintiffs/Appellants Ervin Middleton and Ann Gates Middleton (hereinafter "Ervin Middleton" or "Appellants") filed in the Federal Court of Nevada an Action for Enforcement of Rescission, petitioning the court for Declaratory Relief by way of Complaint to Enforce the Rescission against multiple party defendants.

12.     On June 9, 2015, Wells Fargo Bank, N.A. filed 12(b)6 motion to dismiss the complaint.  (ECF 6,7)

13.     On June 11, 2015, Defendant Guarantee Rate, Inc. filed its joiner to Wells Fargo Bank, N.A.  Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as well. (Doc 10)

14.     On June 22, 2015 Appellants timely filed opposition to Motion to Dismiss (ECF 14) and its joinder (ECF 15).

15.     Also on June 22, 2015, Appellants filed motion to strike Motion to Dismiss and its joinder. (ECF 16)

16.     On June 25, 2015, the court issued an order without a hearing on a motion to dismiss filed by Wells Fargo Bank, N.A. and Guarantee Rate, Inc. (ECF 18) and Denied Motion to Strike.

17.    The District Court dismissed the action under 12(b)(6), but yet *inter alia* failed to accept the allegations of the complaint as true. *See Kahle* v. *Gonzalez,* 487 F.3d 697, 699 (9th Cir. 2007).

18.    On June 26, 2015 the Clerk entered Judgment in favor of Defendants. (ECF 19)

19.    On June 26, 2015, Appellants filed Mandatory Judicial Notice Re not giving consent to Magistrate Judge to Proceed. (ECF 20)

20.    On July 10, 2015, Appellants filed Notice of Appeal (ECF 21)

21.    On October 27, 2015, Appellants filed a motion in the district court to set aside judgment and requested that appeal be voluntarily dismissed. (ECF 26)

22.    The motion to dismiss the appeal was granted (ECF 28) and filing fee was refunded.

23.    On November 9, 2015, Wells Fargo Bank, N.A. file its response to motion to set aside Judgment. (ECF 30) Guaranteed Rate, Inc. (GRI) joined in the response. (ECF 31)

24.    On November 9, 2015, the court issued an order denying motion to set aside judgment. (ECF 32)

25.    On December 3, 2015, Appellants file motion to reinstate appeal. (ECF 33)

26.    On December 18, 2015, Appellants filed motion for reconsideration of denial to set aside.

27.     On January 4, 2016, Wells Fargo Bank, N.A. filed its response to motion for reconsideration. (ECF 38) and Guaranteed Rate, Inc. joined in the response. (ECF 39)

28.     On January 14, 2016 Appellants filed their reply to Defendants' response. (ECF 40)

29.     On January 25, 2016, the court denied both motion ECF 33 and ECF 35.

30.     On January 29, 2016, Appellants filed Second Notice of Appeal. (ECF 42)

31.     As a result the Appellate Court has jurisdiction to review the case de novo.

## SUMMARY OF ARGUMENT

32.     The District Court erred in dismissing the complaint, the District Court's abandonment of, inter alia, Supreme Court Precedent, the Federal Rules of Civil Procedure which govern almost all litigations in the Federal District Court; and in doing so the District Court Judge, beyond the pale, did not construe the Federal Rules of Evidence to secure fairness to the end that the truth may be ascertained and proceeding justly determined, by inter alia, the following axiom of law:

> Neither a court of law, nor an individual, nor a group of individuals, can take away the Rights of a Citizen secured by the Laws of the Constitution of the United States of America, or the Federal Laws and Treaties of the United States of America

33.     Such as Appellants' Case In Chief: Appellants' Complaint is based on the Truth in Lending Act ("TILA") 15 U.S.C. §1635 and 12 *CFR.* 226.23, and the

recent Supreme Court precedent of *Jesinoski v. Countrywide Home Loans, Inc.* 574 U.S. ___ (2015), which gives Ann Gates Middleton an unconditional right of rescission of the loan documents within the three year statute of repose. Ervin Middleton is husband of Ann Gates Middleton and has a lawful interest in the community property namely the real property Appellants reside in. Ervin Middleton's claim is for restitution only.

34.    On March 14, 2012, in anticipation of a home loan in the amount of $124,520.00, Ann Gates Middleton executed a promissory note and security agreement (deed of trust).

35.    On March 5, 2015, Ann Gates Middleton sent by certified mail return receipt a Notice of Rescission to GRI and Wells Fargo as required effecting the requirements to rescind under TILA. In its dismissal order the court inaccurately calculates the end of the three year statue of repose making it March 10, 2015, instead of March 14, 2015, whereas the deed of trust was signed on March 14, 2012, however it being a harmless error Appellants do not raise it on Appeal.

36.    The instant case does not ask for rescission and is not a suit to make the rescission effective the instant case is to enforce the rescission. The cancellation of the note and deed of trust has already happened by operation of law. See *Jesinoski*. The rescission is effective, the note and deed of trust are void as of the date of mailing of the notice of rescission. The instant suit is to enforce the return of the

note marked cancelled, reconveyance of the deed of trust and return of all monies paid.

## STANDARD OF REVIEW

### *Rule 12(b)(6) Failure to State a Claim*

37.    A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).

38.    "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

39.    When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

40.    In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc.* V. *Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).

41.    To survive motion to dismiss for failure to state claim, plaintiff does not have to allege facts sufficient to establish his right to judgment in his favor, and plaintiff may make reference to facts that are as yet hypothetical in order to demonstrate that he may be able to establish set of facts that would entitle him to judgment. *Pearman v Norfolk & W.R. Co.* (1991, CA7 Ill) 939 F2d 521.

42.    Complaint should not be dismissed merely because plaintiff's allegations do not support particular legal theory he advances since court is under duty to examine complaint to determine if allegations provide for relief on any possible theory; nor should complaint be dismissed that does not state with precision all elements that give rise to legal basis for recovery; nor should complaint be dismissed merely because court doubts plaintiff will prevail in action since that determination is properly made on basis of proof and not merely on pleadings; question therefore, is whether in light most favorable to plaintiff complaint states any valid claim for relief; as practical matter, dismissal under Rule 12(b)(6) is likely to be granted only in unusual case in which plaintiff includes allegations that show on face of complaint that there is some insuperable bar to relief. *Thomas W. Garland, Inc. v St. Louis* (1979, CA8 Mo) 596 F2d 784, cert den (1979) 444 US 899, 62 L Ed 2d 135, 100 S Ct 208.

43.    In deciding rule 12(b)(6) motion, material factual allegations in complaint are to be taken as true, however, District Court must not speculate that

unmentioned factual propositions or evidentiary links are among facts plaintiff intends to prove at trial. *ACLU Foundation of Southern California v. Barr*, (1991, App DC) 293 US App DC 101, 952 F2d 457, 21 FR Serv 3d 1063.

## ARGUMENT

## I. The District Court erred in dismissing Appellants' complaint pursuant to F.R.C.P. 12(b)(6)

44. Appellants brought the instant complaint under Truth in Lending Act, 15 U.S.C. § 1635 et seq., and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.23 and *Jesinoski* v. *Countrywide Home Loans, Inc.,* 574 U.S. ___ (2015).

45. Under Rule 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the appellant fails to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F3d 729, 732 (9th Cir. 2001)).

46. The relief granted by to all defendants has been characterized as "sweeping" and based once again upon unconnected non-logical and baseless series of arguments that appear to be based upon misrepresentations and omissions to the court and not on the facts and in total contradiction to Federal Rule of Evidence 404.

47. Jurisdiction of Federal court to entertain action as one arising under

Constitution and laws of United States is not defeated by possibility that complaint may fail to state cause of action on which relief may be granted. *Bell v Hood,* (1946) 327 US 678, 90 L Ed 939, 66 S Ct 773, 13 ALR2d 383.

48.    In *Walter Process Equipment v. Food Machinery*, 382 U.S. 172 (1965) it was held that in a "motion to dismiss, the material allegations of the complaint are taken as admitted." From this vantage point, courts are reluctant to dismiss complaints unless it appears the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conlev vs. Gibson*, 355 U.S. 41(1957).

49.    Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46(1957). The Motion to Dismiss should have been denied in respect to any/all of the counts because the facts and causes of action have been pleaded with specificity and not as mere conclusions.

50.    "But where no trained advocate is present…" "…the court itself undertakes to assure the litigant that no meritorious case be lost because of a lack of legal skill. Briefs are scanned with unjaundiced eyes and technical compliance with the Rules of Court is not stringently enforced. The dominant theme is liberality. *Darr v. Burford*, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761." See *Hoffman v. U.S.*, 244 F.2d 378, 379 (9th Cir. 1957).

51.     Under Rule 12(b)(6) and different circumstances Appellants would have to prove set of facts in support of their claim which would entitle Appellants to relief. In the instant case Appellants have alleged in their complaint and Appellees did not dispute the fact that a Notice of rescission was sent on March 5, 2015, Appellants have alleged in their complaint and Appellees did not dispute the fact that a Notice of rescission was received by Appellees on March 10, 2015 and March 12, 2015, Appellants have alleged in their complaint and Appellees did not dispute the fact that Appellees failed to challenge the Notice of Rescission within 20 days to preserve any rights they contend they may have and failed to Cancel the Note, Reconvey the Deed of Trust and return all moneys paid within 20 days as required by TILA. These undisputed facts that *prove for the Appellants and the court* all facts in support of their claim entitle Appellants to relief.

52.     The District Court Should Have Denied Defendants' Motions To Dismiss.

53.     The court interpreting a statute must look first to the language of the statute for evidence of its meaning. *Estate of Cowart v. Nicholas Drilling Co*., 205 U.S. 469, 474 (1992); *Robinson v. Shell Oil*, 519 U.S. 337, 340 (1997). If the language is clear, the Court must give effect to the plain meaning of the statute. *Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980*) ("The starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily

be regarded as conclusive").

54.     The District Court stated in its dismissal order that: "Wells Fargo also argues that the three-year statute of repose does not apply in this case. Wells Fargo is correct that the three-year period only applies where there is no proper TILA disclosure, otherwise the time limit is three" (ECF 18, Page 4, Ln. 21-23)

55.     Appellants' Complaint is based on TILA's Enforcement of Rescission and its 20 day statute of limitation for Appellees to raise any issue due to the absence of a timely challenge to the Notice of Rescission including but not limited to the three-year statute of repose, however in the instant case even the court rules that "Plaintiffs sufficiently alleged a lack of a TILA disclosure" (ECF 18, Page 5, Ln. 8) thus the court negated its own and Wells Fargo waived argument that "the three-year statute of repose does not apply in this case."

56.     Material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc.* v. *Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).

57.     District court failed to consider the fact that Appellees failed to comply with TILA and *Jesinoski* requirements that within 20 days from receipt of the Notice of Rescission they must (1) return the canceled note (2) file a reconveyance of deed of trust and (3) return all money paid by borrower. If the creditor fails to do that they have violated the statute.

58. The logic of the complaint is compelling, and does not belong to an Alice-in-Wonderland world. Even in light of the Supreme Court's holding in *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1951 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), this complaint, when viewed by the Court, with all factual assertions being taken as true, without a doubt "plausibly suggest an entitlement to relief." *Ashcroft*, 129 S.Ct. at 1950.

59. Appellees attempt to circumvent TILA's 20 day limitation by raising all arguments on their motion to dismiss and subsequent opposition to the motion for reconsideration.

60. Appellees by their non-performance of C.F.R. 226.23(d)(2) within the 20 day required performance period following tender of the Notice of Rescission as provided in 12 C.F.R. 226.23(d)(2) have as a matter of law waived any defense or claims which effects the loan cancellation.

61. Thus, the right of defendants to challenge the Rescission by Plaintiffs is legally barred by operation of the statute of Limitation inherent in TILA which in pertinent part states:

> **12 CFR 226. 23(d){2)**
>
> Within 20 calendar days after receipt of a notice of rescission, the **_creditor_ shall return any money or property that has been given to anyone in connection with the transaction** and shall take any action necessary to reflect the termination of the security interest. [emphases added]

## II.  Appellants Did Not Sue GRI and Wells Fargo For Rescission but for Enforcement of Rescission

62.    The court misconstrued and/or erred concluding that Appellants instituted this action for rescission. Appellants instituted this action for *enforcement* of rescission, **not a request for one**. Appellants are entitled to relief of actual damages and equitable relief, statutory damages, and the costs of this action against named Defendants for multiple violations of the Truth in Lending act, 15 U.S.C. § 1635 et seq., (hereinafter TlLA), and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.23 and 12 C.F.R. § 1026.23(d)(2) pursuant thereto and as pendent Claims for Enforcement of Rescission under TlLA; Restitution of Assets. Per statutes: Rescission effected per 15 U.S.C. §1635(b), Regulation Z, 12 C.F.R. 226.23(d)(1) and 12 C.F.R. § 1026.23(d)(2).

63.    The instant suit is to enforce the rescission and is NOT a suit to make the rescission effective by operation of law. The cancellation of the note and deed of trust has already happened by operation of law. The note and deed of trust are void as of the date of mailing of the notice of rescission contrary to defendants baseless arguments. The instant suit is to enforce the return of the note marked cancelled, record reconveyance of deed of trust, return the original deed of trust and return all monies paid Appellants. See *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. ___ (2015).

"A borrower exercising his right to rescind under the Act need only provide written notice to his lender within the 3-year period, not file suit within that period. Section 1635(a)'s unequivocal terms—a borrower "shall have the right to rescind . . . *by notifying the creditor. . . of his intention to do so*" (emphasis added)—**leave no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind**." Jesinoski v. Countrywide Home Loans, Inc. 574 U.S. _ (2015). [bold emphases added]

64.     On March 5, 2015, Ann Gates Middleton sent by certified mail return receipt a Notice of Rescission to GRI and Wells Fargo as required effecting the requirements to rescind under TILA, ***this fact is undisputed***.

65.     Appellees did not challenge or contest this rescission notice as the only choice they would have under §226.23(d)(2)(3) in order to preserve their rights under TILA  therefore the alleged loan debt had been forfeited and forever released by Appellees and any others involved by their failure to challenge <u>within 20 days of tender of the rescission</u> of their obligations under 226.23(d)(2)(3) by the end of the 20 day performance period for Appellees ending on ***3/30/2015***. Therefore, under the law there is no enforceable Note or Deed of Trust to be made by Defendant or any other parties involved, ***this fact is undisputed as well***.

66.     In Jesinoski a unanimous (a rarity) United States Supreme Court stated:

"The Eighth Circuit's affirmance in the present case rested upon its holding in *Keiran* v. *Home Capital, Inc.*, 720 F. 3d 721, 727–728 (2013) that, unless a borrower has filed a suit for rescission within three years of the transaction's consummation, §1635(f) extinguishes

the right to rescind and bars relief. That was error. Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added). **The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely.** The statute does not also require him to sue within three years."[bold emphases added]

67.    Supreme leaves no ambiguities in its language regarding the timeliness of the rescission and sets no further requirement as to any all conditions raised by the court and the Appellees.

68.    Pursuant to 12 C.F.R. § 226.23 –

(**2**) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. **Notice is considered given when mailed**, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business. [emphases added]

69.    There is no other interpretation of "effective" because the Supreme Court under the annoyed pen of Justice Scalia has said there is nothing to interpret. When the rescission was mailed it was effective ***by operation of law***.

70.    Notwithstanding that Appellants have full right to rescind the transaction and recall their loan documents back, Appellants do not have to be right to send it. THAT issue is left to the *true* creditors to allege in a lawsuit to vacate the

rescission. **And they must do so within 20 days.**

71.     The laws, rules and procedures for the TILA rescission could not be clearer -

-- as the opinion written by Justice Scalia stated with dripping sarcasm. BUT some

Judges and many lawyers believe that the statute was framed incorrectly and that

Congress never anticipated the problems that we face today with these wild,

convoluted claims of securitization. So they are basically taking the faith-based

legal approach instead of the "nation of laws" approach provided in the

Constitution. They are saying the US Supreme Court is wrong or didn't mean what

it said, just as they said before when hundreds of thousands of decisions came

down requiring a lawsuit claiming fraud, and tender to property or money to even

have standing to enforce rescission. The assumption, even by fervent advocates of

the rights of homeowners, was that it just wasn't possible that Congress meant to

give homeowners that much power to cancel a loan contract, note and mortgage.

They are wrong including these Appellees. That is exactly what Congress intended

to do.

72.     "**Supreme Court precedent is not like the ash on a cigarette, to be

flicked off whenever convenient**." *Ash v. Tyson Foods, Inc.,* 2011 WL 6270741

(11th Cir. Dec. 16, 2011) (bold emphasis added)

73.     As a result of the Appellees failure to abide by TILA and Jesinoski

Appellants filed their complaint to enforce their rights under the law.

### III. Ervin Middleton **DOES NOT** Lack Standing to Bring Suit Against Defendants

74. The court in its dismissal order rules that: "Wells Fargo is correct that Ervin Middleton does not have standing to pursue a TILA claim, because he is not an obligor of the loan." The court erred.

***Real Party in Interest***

75. Ervin Middleton is a Real Party in Interest pursuant to Rule 17(a). Ervin Middleton is also possessor of the property, *when the possessor of property other than the owner sues for an invasion of the possessory interest he is the real party in interest*.

76. Meaning and object of "real party in interest" principle embodied in Rule 17 is that action must be brought by person who possesses right to enforce claim *and who has significant interest in litigation. Virginia Electric & Power Co. v Westinghouse Electric Corp.* (1973, CA4 Va) 485 F2d 78, 17 FR Serv. 2d 1103, cert den (1974) 415 US 935, 39 L Ed 2d 493, 94 S Ct 1450. [Emphases added]

77. Person who, according to governing substantive law, is entitled to enforce right is "real party in interest". *Johnson v Secretary of U.S. Dep't of Housing & Urban Dev*. (1981, ED La) 544 F Supp 925, affd. in part and revd. in part on other grounds (1983, CA5 La) 710 F2d 1130.

78.    In order to establish standing all Ervin Middleton has to do is to show that he has an interest in the property, and by defendants own admission Ervin Middleton is a husband of Ann Gates Middleton and as a result has an interest in the property.

79.    "This Court sees no basis for distinguishing personal stake required under Fed. R. Civ. P. 17(a) from interest required for standing." *APCC Servs. v Sprint Communs. Co*., (2005, App DC) 368 US App DC 79, 418 F3d 1238, reh den (2005, App DC) 2005 US App LEXIS 24400 and reh, en banc, den (2005, App DC) 2005 US App LEXIS 24402.

80.    Supreme Court has long held that Article III compels most of the requirements of the standing doctrine. The Supreme Court has steadfastly held that certain elements of standing are constitutionally mandated. In the 1970s, the Court handed down a series of decisions in which it elaborated on the constitutional dimensions of the standing doctrine. In such cases as *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39–44 (1976). *Warth v. Seldin*, 422 U.S. 490, 499–504 (1975) and *Linda R.S. v. Richard  D.*, 410 U.S. 614, 616–18 (1973) the Court made it clear that Article III requires a plaintiff to demonstrate three things in order to maintain any action in federal court: injury-in-fact, causation, and redressability.

***Injury-in-Fact***

81.    In *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150 (1970) Justice William O. Douglas led the majority in discarding the legal right test and replacing it with an injury-in-fact test. The *Camp* Court made it clear that the plaintiff did not have to show a valid cause of action *to have standing to sue*. Ervin Middleton does not have to show a legal harm, only an injury "in fact".

82.    Thus, current standing doctrine, as established by *Camp*, is based on a non legal baseline of what constitutes injury. For example, the Court has said that "pocketbook" or "wallet" injury always qualifies. Ervin Middleton alleges that his interest in the property satisfies the injury-in-fact test.

### *Causation*

83.    The touchstone of standing had become the existence of a "personal stake in the outcome of the controversy." *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 90 (1947). Thus, the Court not only required that the plaintiff suffer an injury-in-fact, but also that the injury be "fairly traceable" to the defendant's conduct. *Allen v. Wright*, 468 U.S. 737, 756–57 (1984). This has become known as the causation prong of the standing doctrine. And again Ervin Middleton has satisfied this prong of the test of causation which is "traceable" to Appellees conduct.

### *Redressability*

84.    Both *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 44 (1976) and *Allen v. Wright*, 468 U.S. 737 (1984) highlight the Redressability prong as well. There is

enough evidence, even at the pleading stage, where Ervin Middleton's injuries necessarily can be redressed if the Court did not err and granted the requested relief.

85. The injury–causation–redressability regime stems from the Court's previous pronouncements in *Baker v. Carr*, 369 U.S. 186, 204 (1962) and *Flast v. Cohen*, 392 U.S. 83, 99 (1968) that Article III standing requires the plaintiff to have a "personal stake in the outcome of the controversy."

86. Notwithstanding all of the above, Appellees are barred from bringing any issue that should have been brought forth to the court of competent jurisdiction during the 20 days window.

87. The court and Appellees relied on *Davidson v. Countrywide Home Loans, Inc.*, 2011 WL 1157569, *5 (S.D.Cal. Mar. 29, 2011). However, even in the Davidson case the court stated "Davidson may be able to show she retains a sufficient interest in the property to establish standing to assert a TILA claim." *Davidson v. Countrywide Home Loans, Inc*., 2011 WL 1157569, *5 (S.D.Cal. Mar. 29, 2011).

88. Ervin Middleton has made clear and convincing case to satisfy all three requirements.

89. The Supreme Court of United States defined "***property***" as the "***group of rights*** inhering in the citizen's relations to the physical thing, as the right to

possess, use and dispose of it." *United States v. General Motors Corp*, 323 U.S. 373 (1945).

90.     Furthermore, the instant argument should have been brought by Appellees in a separate action to contest the rescission by filing, as the choice they had within 20 days of receipt of the notice, judicially new lawsuit challenging the content of the Notice of Rescission. Appellees are barred from bringing any issue that should have been brought forth to the court of competent jurisdiction during the 20 days window. Appellees waived their defenses, acquiesced and waived any and all arguments pertaining to rescission.

**IV.     The District Court abused its discretion in not holding the complaint to less stringent standards and not granting Appellants leave to amend the complaint**

91.     Pro se pleadings must be construed by a "less stringent standard." See *Haines v. Kerner*, 404 U.S. 519-20, (1972). Pro se litigant should generally be notified of his complaint's deficiencies and given at least one opportunity to cure them. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir.1995). In Cato this court accurately said that "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987)"

92.     Accordingly such pleadings should be held to a less stringent standard than

those drafted by licensed, practicing attorneys. Implicit in the right of self representation is an obligation on the part of any court to make reasonable allowances to protect *unrepresented* litigants from inadvertent forfeiture of important Rights because of any lack of formal legal training. See *Traguth v. Zuck*, 710 F.2d 90, 95 (2nd Cir. 1983); *Hoffman v. U.S.*, 244 F.2d 378, 379 (9th Cir. 1957); *Darr v. Burford*, 339 U.S. 200 (1950).

93.    Unrepresented litigant should be given a reasonable opportunity to remedy defects in his [or her] pleadings if the factual allegations are close to stating a claim for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

94.    In *Puckett v. Cox,* 56 F.2d 233 (6th Cir. 1972) it was held that a unrepresented litigant's complaint requires a less stringent reading than one drafted by a lawyer.

95.    Justice Black in *Conley v. Gibson,* 355 U.S. 41 at 48 (1957) states "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty* v. *Grasselli Chemical Co.,* 303 U. S. 197."

96.    The *Conley* Court also cited Rule 8(f) F.R.C.P., which holds and declared that "all pleadings shall be construed to do substantial justice."

97.    Appellants raise this issue and argued that to dismiss an action in which a

serious factual pattern or allegation of a cause of action has been made would itself be violative of procedural due process as it would deprive an unrepresented litigant of equal protection of the law visa vis a party who is represented by counsel. In a fair system, victory should go to a party who has the better case, not the better representation. Appellants clearly state a claim upon which relief can be granted.

98.    F.R.C.P. 15(2) "*Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. **The court should freely give leave when justice so requires**." [bold emphases added]

99.    Pro se pleadings generally are held to less stringent standards than those applied to members of the Bar. For example, in reviewing a pro se litigant's complaint for dismissal, the court must read the complaint less stringently than it would an attorney's. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981).

100.    "Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *McGary v. City of Portland,* 386 F.3d 1259,1261 (9th Cir.2004).

101.    Pro se complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact.  *See Brandon v. Dist. of*

*Columbia Bd. of Parole,* 734 F.2d 56, 62 (D.C. Cir. 1984), *cert, denied,* 469 U.S. 1127 (1985); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983).

102.   Similarly, pro se complaints cannot be construed inflexibly so as to require dismissal if the complaint fails to request precise appropriate relief. *See DeWitt v. Pail*, 366 F.2d 682, 684-85 (9th Cir. 1966); *Downing v. New Mexico Supreme Court*, 339 F.2d 435, 436 (10th Cir. 1964) (per curiam); *Holsey v. Bass*, 519 F. Supp. 395, 402-03 (D. Md. 1981), *aff'd,* 712 F.2d 70 (4th Cir. 1983).

103.   Accordingly the district court should have allowed Appellants to amend their complaint.

## V.     The District Court incorrectly misapplied TILA by declaring that the right to rescind under TILA exists only if the property is NOT itself the security for the loan obtained to purchase it.

104.   15 U.S. Code § 1635 - Right of rescission as to certain transactions

   (a) DISCLOSURE OF OBLIGOR'S RIGHT TO RESCIND

   Except as otherwise provided in this section, **in the case of any consumer credit transaction** (including opening or increasing the credit limit for an open end credit plan) ***in which a security interest***, including any such interest arising by operation of law, ***is or will be retained or acquired in any property* which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction** until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by

notifying the creditor, in accordance with regulations of the Bureau, of
his intention to do so. The creditor shall clearly and conspicuously
disclose, in accordance with regulations of the Bureau, to any obligor
in a transaction subject to this section the rights of the obligor under
this section. The creditor shall also provide, in accordance with
regulations of the Bureau, appropriate forms for the obligor to
exercise his right to rescind any transaction subject to this section.
[emphases added]

105.   The court on its dismissal order has made a ruling that "right to rescind
under TILA exists only if the property is not itself the security for the loan
obtained to purchase it." (ECF 18, Pg. 5, Ln. 20, Pg. 6, Ln. 1-2).

106.   Such ruling flies in the face of TILA and Congresses express desire to allow
rescission in "**any consumer credit transaction… in *which a security interest***
(i.e. mortgage or deed of trust) "*is or **will be** retained or **acquired in any property***
**which is used as the principal dwelling"**

107.   It is unclear the logic that the court used to come to the conclusion that
"**right to rescind under TILA exists only if the property is <u>NOT</u> itself the
security for the loan obtained to purchase it."** [emphases added]

108.   In other words the court declared that in order for Appellants to have the
right to rescind, Appellants' property cannot be used as security under the deed of
trust. Appellants are not aware of any situation or a transaction where a consumer
applied for a home loan and the bank granted the loan without using the property
as security.

109.   The case law that the court relied upon *In re Schweizer,* 354 B.R. 272 (Bankr. D. Idaho 2006) and *De Jesus-Serrano* v. *Sana Inv. Mortgage Bankers, Inc.,* 552 F. Supp. 2d 191 (D.P.R. 2007) are direct on Appellants point that even if a consumer takes out a loan on a property to finance the purchase of another property rescission under TILA applies even though the loan was not directly securing the purchase.

110.   The court misrepresents and/or misapplies the wording of TILA being positive law and the case law it relies on.

111.   In the instant case Appellants were involved in a **consumer credit transaction… in** *which a security interest*, i.e. the deed of trust has been ***retained and acquired*** in Appellants property which is used by Appellants as the principal dwelling**,** clearly meeting the requirement to rescind under TILA.

112.   Furthermore, Appellees are barred from bringing any issue that should have been brought forth to the court of competent jurisdiction during the 20 days window.

## VI.   The District Court erred and incorrectly interpreted the definition of "residential mortgage transaction"

113.   15 U.S. Code § 1602 - Definitions and rules of construction

> (x)   The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an **installment sales contract,** or **equivalent** consensual security interest is created or retained against

the consumer's dwelling **to finance the acquisition or initial construction of such dwelling**. [emphases added]

114. Congress did not intend under this definition to exclude the Appellants and an entire class of citizens numbering in millions from a remedy that Appellants argue TILA provides for a regular purchase of an existing property secured by the Deed of Trust/Mortgage as oppose to finance the acquisition or purchase of initial construction dwelling.

115. The court must look at the TILA definition in its entirety and read the first part of the definition with what TILA clearly defines as:

> "*a transaction in which a mortgage, deed of trust, purchase money security interest arising under an **installment sales contract***," **(coma).** [emphases added]

116. TILA does not define what an installment sales contract is, however Consumer Financial Protection Bureau (CFPB) on their website defines retail installment sales contract as follows:

> "A retail installment sales contract agreement is slightly different from a loan. Both are ways for you to obtain a car by agreeing to make payments over time. But a loan is a transaction between you and a bank or other lender for money, where you use the money to purchase a car and agree to repay the loan balance plus interest. A retail installment sale, on the other hand, is a transaction between you and the car dealer to purchase a car where you agree to pay the dealer for the car over time, paying both the value of the car plus interest."
> http://www.consumerfinance.gov/askcfpb/817/what-retail-installment-sales-contract-or-agreement-loan.html

117. Black's Law Dictionary 6th Edition on Page 799 defines Installment Sale as follows:

> "Commercial arrangement by which buyer makes initial down payment and signs a contract for payment of the balance in installments over a period of time. In accounting for such sales, the seller may either account for the profits on basis of each installment payment received or the entire amount in the period of the sale; in latter case, reserves are established for bad debts, collection expenses and costs of reconditioning returned merchandise. See also Installment contract; Installment credit; Installment loan; Installment method; Truth-in-Lending Act.

> Retail installment sale. The sale of goods or the furnishing of services by a retail seller to a retail buyer for a deferred payment price payable in installments. Retail installment sales contracts are governed with respect to disclosure of terms and finance charges by Truth-in-Lending Act (q. v.)"

118. Same Black's Law Dictionary on Page 798 also defines the term Installment contract as follows:

> "Installment contract. Type of agreement calling for periodic performances and payments. An "installment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent. U.C.C. § 2-612."

119. Clearly looking at the first part of TILA's definition of what residential mortgage transaction is points us to the words "**installment sales contract"**, looking at CFPB and Black's Law definitions it's clear that the installment sales contract is where a buyer and seller agree to complete a sale of goods or services or property where the buyer is required to make *periodic payments toward the*

*purchase price* of goods or services or property and only on the last payment is the seller required to deliver a deed and to secure the transaction the seller can obligate the buyer to take out mortgage, deed of trust or purchase money security interest.

120. The second part of the definition rests on the word "equivalent"

> "or **equivalent** consensual security interest is created or retained against the consumer's dwelling **to finance the acquisition or initial construction of such dwelling**." [emphases added]

121. The word *equivalent* continues to connect "**installment sales contract**" to the first section and all it contains within such as when "**equivalent** consensual security interest is created or retained against the consumer's dwelling **to finance the acquisition…**" (through an installment sales contract) **"or initial construction of such dwelling."** (through an installment sales contract)

122. The typical scenario that would fall squarely under that definition is *owner financing*. At the time TILA was enacted the real estate market was booming thorough "no money down" and "owner financing" real estate deals where the owner of the property for sale would assist the buyer who lacked the funds to complete the purchase agree to sign a mortgage or a deed of trust to assist the buyer to "**finance the acquisition or construction of such dwelling."**

123. Such arrangement falls squarely under the definition of "**installment sales contract."** where the buyer is required to make *periodic payments toward the purchase price.*

124.  On June 30, 2011 Housing and Urban Development Department (HUD) published a Rule in a Federal Register regarding SAFE Mortgage Licensing Act, wherein HUD confirms Appellants' explanation of what constitutes "residential mortgage transaction", HUD states:

> "As an initial statement, HUD confirms the commenters' observation that a "residential mortgage loan" includes an installment sales contract, which the commenters advise is frequently involved in seller financing. "Residential mortgage loans," as defined by section 1503(8) of the SAFE Act, refers to typical financing mechanisms such as mortgages and deeds of trusts. In addition, the SAFE Act definition also includes "other equivalent consensual security interest on a dwelling (as the term `dwelling' is defined by section 103(v) of TILA or residential real estate upon which is constructed or intended to be constructed a dwelling," which has the potential for including a broad range of other financing mechanisms. *For the purposes of this rule, "equivalent consensual security interests" specifically include installment sales contracts,* consistent with the treatment by many states of such contracts in the same manner as mortgages and purchase money mortgages offered by sellers of residential real estate. While there is no formal recorded lien held by the provider of financing, *the fact that the seller holds title to the property until the contract has been paid in full is the practical equivalent of a lien* for purposes of the SAFE Act and its purposes and is comparable to the status of a mortgage in a state that follows title theory under mortgage law. *Inclusion of installment sales contracts in the scope of the definition of "residential mortgage loan" is also consistent with section 103(w) of TILA and 12 CFR 226.2(a)(24) of the Federal Reserve Board's implementing regulations (Regulation Z), both of which include in the definition of "residential mortgage transaction," a purchase money security interest <u>arising under an installment sales contract</u>.*" [emphases added]

https://www.federalregister.gov/articles/2011/06/30/2011-15672/safe-mortgage-licensing-act-minimum-licensing-standards-and-oversight-responsibilities

125.   The court is requested to take Judicial Notice pursuant to the Federal Rules of Evidence of the Black's Law Dictionary, CFPB and HUD definitions quoted hereto, which are consistent with Appellants position and confirm the error and misconstrued ruling of the District Court. The definitions are available on the government's websites through the web links included hereto.

126.   Contrary to the courts' ruling the definition of "residential mortgage transaction' is not applicable in the instant case **as Appellants' property was not purchased under an installment sales contract**.

127.   Furthermore, Appellees waived their right to argue the Notice of Rescission or any part of it or any alleged defect in it pursuant to TILA 20 day statute of limitation due to the absence of a timely challenge to the Notice of Rescission.

**VII.   The District Court erred in not conforming to the Federal Rules of Evidence.**

128.   The Federal District Court is constrained by Article 11 of the Federal Rules of Evidence, Rule 1101. Applicability of the Rules.

(a) To Courts and Judges. These rules apply to proceedings before:

· United States district courts;

· United States bankruptcy and magistrate judges;

· United States courts of appeals;

· The United States Court of Federal Claims; and

· The district courts of Guam, the Virgin Islands, and the Northern Mariana Islands.

(b) To Cases and Proceedings. These rules apply in:

· Civil cases and proceedings, including bankruptcy, admiralty, and maritime cases;

· Criminal cases and proceedings; and

· Contempt proceedings, except those in which the court may act summarily.

129.  All proceedings in the United States District Court are constrained by Federal Rules of Evidence Rule 102 whereby the court must construe the Federal Rules of Evidence to justly determine that an owner always can recover stolen goods.

130.  The District Court restricted Appellants' complaint and due process, by the failure to comply with the wording, spirit and intent of the Federal Rules of Evidence, and in doing so the District Court beyond the pale failed to be constrained by the Federal Rules of Evidence Rule 102, and failed to construe the Rules of Evidence to secure fairness to the end, that the truth may be ascertained and proceeding justly determined.

131.  The District Court Judge in its order to dismiss egregiously departs from the wording, spirit and intent of 1101(a)(b) of the 11 Articles and 63 Rules of the Federal Rules of Evidence.

132.  Most troublesome: The District Court Judge's in substance and in part

abandonment of Rule 1101(a)(b) contains the tainted appearance of justice fraught with a complete disregard for, and abandonment thereof to the Federal Rules of Evidence, by failure to comply with Federal Rules of Evidence, which govern litigation in the Federal District Court.

133. Whereby the District Court Judge dismissed Appellants' complaint, and failed to give the Appellants, the opportunity to make a showing when the Ruling is one that excludes evidence in a fashion that places the Appellants at a substantive and substantial material disadvantage.

## **CONCLUSION**

The District Court erred and clearly abused its discretion by dismissing the Appellants' complaint pursuant to F.R.C.P. 12 (b)(6). The District Court erred and clearly abused its discretion by basing the dismissal on unsupported and misinterpreted reasoning of Ervin Middleton's lack of standing and wrong interpretation and misapplication of what "residential mortgage transaction" is.

The District Court erred in not conforming to the Federal Rules of Evidence. The District Court failed to apply the Rules of Evidence to secure fairness to the end that the complaint and all allegations must be taken as true and that the truth may be ascertained and proceedings justly determined through trial.

The serious errors and abuse of discretion in the district court's order require that the order be vacated. Appellants respectfully asks that this Court reverse the

erroneous decision of the District court, and remand the complaint back to District Court in Las Vegas Nevada for trial as requested in the complaint that was erroneously dismissed.

By:  /s/ Ann Gates Middleton
      Ann Gates Middleton
      2375  E. Tropicana Ave. #358
      Las Vegas, Nevada 89119
      Tel: 702-478-8962
      emiddle25@yahoo.com

By: /s/ Ervin Middleton
     Ervin Middleton
     2375 E. Tropicana Ave. #358
     Las Vegas, Nevada 89119
     Tel: 702-478-8962
     emiddle25@yahoo.com

Dated: May 9, 2016

## Certificate of Compliance

The undersigned certifies under Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1, that the attached opening brief is proportionally spaced, has a type face of 14 points or more and, pursuant to the word-count feature of the word processing program used to prepare this brief, contains 9,251 words, exclusive of the matters that may be omitted under Rule 32(a)(7)(B)(iii). Pursuant to Ninth Circuit Rule 28-2.6, Appellants confirm that they are not aware of any related cases pending in this Court.

## Certificate of Service

I hereby certify that on May 9th, 2016, a true and correct copy of the foregoing document was served upon the following via the Court's ECF filing Protocol.


Dated: May 9th, 2016

<div style="margin-left:40%">

By: /s/ Ervin Middleton
Ervin Middleton
2375 E. Tropicana Ave. #358
Las Vegas, Nevada 89119
Tel: 702-478-8962
emiddle25@yahoo.com

</div>